UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

SINCLAIR DAVIS,

     Petitioner,

v.                                                                  Case No. 8:18-cv-2700-KKM-TGW

SECRETARY, DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

## ORDER

Sinclair Davis, a Florida prisoner, timely[1] filed a pro se Petition for Writ of Habeas

Corpus under 28 U.S.C. § 2254 challenging his state court convictions based on alleged

errors of the state trial court and failures of his trial counsel. (Doc. 1.) Having considered

the petition (*id.*), the response in opposition (Doc. 7), and the reply (Doc. 10), the Court

denies the petition. Furthermore, a certificate of appealability is not warranted.

_____

[1] A state prisoner has one year from the date his judgment becomes final to file a § 2254 petition. *See* § 2244(d)(1). This one-year limitations period is tolled during the pendency of a properly filed state motion seeking collateral relief. *See* § 2244(d)(2). Davis's convictions and sentences were affirmed on December 4, 2015. His judgment became final 90 days later, on March 3, 2016, when the period to file a petition for writ of certiorari in the Supreme Court of the United States expired. *See Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002). After 74 days of untolled time passed, on May 17, 2016, Davis filed a motion for postconviction relief. That motion remained pending until the state appellate court's mandate issued on June 5, 2018. After another 145 days, for a total of 219 days of untolled time, Davis filed his § 2254 petition on October 29, 2018. Less than one year of untolled time expired, and the petition is therefore timely.

# I. BACKGROUND

## A. Procedural History

A state court jury convicted Davis of attempted second degree murder with a firearm and armed burglary. (Doc. 7-2, Ex. 4.) The state court sentenced him to life in prison for each count. (Doc. 7-2, Ex. 5.) However, the court granted Davis's motion to correct sentencing errors filed under Florida Rule of Criminal Procedure 3.800(b)(2). (Doc. 7-2, Exs. 9 & 12.) He was resentenced to 30 years in prison with a 25-year mandatory minimum term for attempted second degree murder with a firearm and to life in prison for armed burglary. (Doc. 7-2, Ex. 13.) The state appellate court per curiam affirmed Davis's convictions and sentences. (Doc. 7-2, Ex. 15.)

Davis filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 7-3, Ex. 17.) The state postconviction court struck some of Davis's claims without prejudice to amending them, and it reserved ruling on the remaining claims. (Doc. 7-3, Ex. 18.) After Davis filed an amended motion, the court summarily denied relief on all claims. (Doc. 7-3, Exs. 19 & 21.) The state appellate court per curiam affirmed the denial. (Doc. 7-3, Ex. 27.)

## B.    Facts[2]

Earon Hicks lived with a roommate, who Hicks knew was involved in selling marijuana. (Doc. 7-2, Ex. 3, pp. 201-03.) Hicks was home by himself around 11:00 p.m. on December 6, 2012, when Davis and another man, Edner Dely, arrived in a car and parked near the residence. (*Id.*, pp. 203, 206-10.)

Hicks looked out the window and saw one of the car's doors opening; when the car's dome light illuminated, he recognized Davis in the driver's seat. (*Id.*, pp. 207-08.) Hicks had known Davis for about 10 years from "just playing ball together, seeing him around, being around" and he saw Davis on a regular basis. (*Id.*, pp. 201-02.) Hicks also knew Dely, who Hicks described as a cousin. (*Id.*, p. 202.)[3] Hicks had no problems with Davis or Dely. (*Id.*, pp. 202-03.) Hicks initially believed that Davis and Dely came to pick up another car. (*Id.*, pp. 209-10.)

A few minutes later, Hicks looked out the window again and saw both Davis and Dely getting out of the car. (*Id.*, p. 211.) Hicks also noticed that Davis was carrying a gun, while Dely was not. (*Id.*, pp. 211.) At that moment, Davis was pointing the gun towards the residence. (*Id.*, p. 212.) Hicks called the police, but—because his phone only worked on speaker—he hung up as Davis and Dely approached. (*Id.*, p. 215.) From his hiding spot

---

[2] The factual background is based on the trial transcript unless otherwise noted.
[3] It is unclear whether Hicks and Dely were in fact related, or whether Hicks merely referred to Dely as a cousin. (Doc. 7-2, Ex. 3, p. 202, 260.)

near the refrigerator, Hicks saw the door open and watched a gun slowly moving in through the door. (*Id.*, p. 217.) Davis, who was holding the gun, came into the house. (*Id.*) Davis turned the lights on, and Hicks had an unobstructed view of him. (*Id.*, p. 218.) Dely remained outside. (*Id.*, p. 223.) When Hicks heard Davis rummaging through items in the living room, he decided to try to run out the back door. (*Id.*, pp. 218-19.) As Hicks ran around the refrigerator, he slipped on a puddle of water on the kitchen floor and fell to the ground. (*Id.*, p. 221.) When Hicks fell, Davis "came out and he just started firing off shots." (*Id.*, pp. 221-22.) Hicks was shot in the foot and knee. (*Id.*, p. 223.) Hicks saw Davis shoot him; at some point, Dely came into the residence but only Davis fired shots. (*Id.*) Hicks managed to get up after he was shot. (*Id.*, pp. 223-24.) He ran out the back door and jumped over the fence, but when he landed on the other side, his leg gave out and he could not get up again. (*Id.*, p. 224.) Hicks then saw Davis and Dely leave the property. (*Id.*, p. 225.) Hicks, who had carried his phone with him, again called the police. (*Id.*, p. 224.)

When Davis was arrested several hours later, he told Detective Todd Koenig that he was at the house of a friend named Davasha Watts at the time of the offenses. (*Id.*, pp. 430-31.) Detective Koenig asked Davis if that information could be verified. (*Id.*, p. 431.) Davis replied that Watts's contact information was on his phone, which police had taken during a pat down. (*Id.*, pp. 431-32.) Detective Koenig testified that when he asked Davis for consent to look through his phone to try to make contact with Watts, Davis granted

permission to go through his phone. (*Id.*, p. 432.) Detective Koenig testified that he found a number for Watts and that in looking through the phone, he located text messages from Davis to Watts. (*Id.*, p. 433.) He testified that he found a text sent from Davis to Watts at 3:10 a.m. on December 7, 2012, which read, "I was with you until about 11:00." (*Id.*, p. 435.)

## II. STANDARD OF REVIEW UNDER SECTION 2254

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief under the AEDPA can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of § 2254(d)(1), a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme]

Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). The phrase "clearly established Federal law" encompasses the holdings only of the Supreme Court of the United States "as of the time of the relevant state-court decision." *Id.* at 412. A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

For purposes of § 2254(d)(2), a state court's findings of fact are presumed correct. *See Rolling v. Crosby*, 438 F.3d 1296, 1301 (11th Cir. 2006) ("The factual findings of the state court, including the credibility findings, are presumed to be correct . . . ."). A petitioner can rebut the presumption of correctness afforded to a state court's factual findings only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. As a result, to obtain relief under the AEDPA, "a state prisoner must show that the state court's ruling on the claim being

presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that "[t]he state court's application of clearly established federal law must be objectively unreasonable" for a federal habeas petitioner to prevail and that the state court's "clear error" is insufficient).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). When the relevant state-court decision is not accompanied with reasons for the decision—such as a summary affirmance without discussion—the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Id.* The state may contest "the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Id.*

In addition to satisfying the deferential standard of federal court review of a state court adjudication, a federal habeas petitioner must exhaust his claims by raising them in state court before presenting them in a federal petition. *See* 28 U.S.C. § 2254(b)(1)(A);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A petitioner satisfies this exhaustion requirement if he fairly presents the claim in each appropriate state court and alerts that court to the federal nature of the claim. *Ward v. Hall*, 592 F.3d 1144, 1156 (11th Cir. 2010).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A petitioner shows cause for a procedural default when he demonstrates "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). "A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.*

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Davis brings several claims for ineffective assistance of trial counsel under the Sixth Amendment. Under the well-known, two-part standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), to succeed, he must show both deficient performance by his counsel and prejudice resulting from those errors. *Id.* at 687.

The first part "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The lynchpin of this analysis is whether counsel's conduct "was reasonable considering all the circumstances." *Id.* at 688. A petitioner establishes deficient performance if "the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

The second part requires showing that the deficient performance prejudiced the defense. *Id.* at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Consequently, federal petitioners rarely prevail on claims of ineffective assistance of counsel because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (quotation and citations omitted).

## IV. <u>ANALYSIS</u>

### A. Ground One

Davis argues that the trial court erred in allowing the jury "unlimited access to [his] cell phone data when the cell phone was admitted into evidence only for one specific text message." (Doc. 1, p. 3.) He claims violations of his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments. (*Id.*)[4]

---

[4] During deliberations, the jurors asked if they could "look at other messages on the cell phone." (Doc. 7-2, Ex. 3, p. 547.) The state trial court responded, "You have to rely on what is in evidence. The cell phone is in evidence, so whatever you choose to do." (*Id.*, p. 550.)

Davis did not raise this claim of trial court error on direct appeal, but he did present it in his postconviction motion. (Doc. 7-2, Ex. 14; Doc. 7-3, Ex. 17, pp. 36-38.)[5] The state postconviction court found that "[t]his is not a cognizable claim under rule 3.850. Claims of trial court error are not reviewable in postconviction motions because they should have been raised on direct appeal." (Doc. 7-3, Ex. 21, p. 6.) The court denied Davis's claim on this basis, which the state appellate court affirmed per curiam. (*Id.*)

Respondent contends that Ground One is procedurally barred because the state court resolved it by applying a state procedural rule. A petitioner's failure to comply with state procedural rules governing the proper presentation of a claim generally bars federal review of that claim in a subsequent federal habeas proceeding. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991) ("This Court will not review a question of federal law decided by a state court if the decision . . . rests on a state law ground that is independent of the federal question and adequate to support the judgment."); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."). A state court's rejection of a petitioner's federal constitutional claim on state procedural grounds precludes federal review if the state procedural ruling rests on an "independent and adequate" state law ground. *Ferguson v.*

---

[5] On direct appeal, appellate counsel filed a brief under *Anders v. California*, 386 U.S. 738 (1967), stating that she could find no meritorious argument to support a contention that the trial court committed significant reversible error. (Doc. 7-2, Ex. 10.)

*Sec'y, Dep't of Corr.*, 580 F.3d 1183, 1212 (11th Cir. 2009); *see also Kimbrough v. Sec'y, Fla. Dep't of Corr.*, 809 F. App'x 684, 691-92 (11th Cir. 2020); *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001).

A state court's procedural ruling constitutes an independent and adequate state rule of decision if (1) the last state court rendering a judgment in the case clearly and expressly states that it is relying on a state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the state court's decision rests solidly on state law grounds and is not intertwined with an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion" or in a "manifestly unfair manner." *Judd*, 250 F.3d at 1313 (citing *Card v. Dugger*, 911 F.2d 1494 (11th Cir. 1990)). A rule must be firmly established and regularly followed by state courts to be considered adequate to foreclose review of a federal claim. *Lee v. Kemna*, 534 U.S. 362, 376 (2002).

Florida courts regularly follow the firmly established rule that claims of trial court error are not cognizable on state collateral review. *See State v. Coney*, 845 So.2d 120, 137 (Fla. 2003) ("To the extent Coney's claims . . . are claims of trial court error, such claims generally are not cognizable in a rule 3.850 motion"); *Bruno v. State*, 807 So.2d 55, 63 (Fla. 2001) ("A claim of trial court error generally can be raised on direct appeal but not in a rule 3.850 motion."). Davis does not establish that the state court applied this rule to him

in an arbitrary or manifestly unfair manner. As the state court's decision was based on an independent and adequate state law rule to support the decision and was not intertwined with the merits of the federal constitutional question, Davis's federal claim is procedurally defaulted on federal habeas review. It can be considered only if Davis establishes that either the cause and prejudice or fundamental miscarriage of justice exception applies to overcome the default. *See Harris v. Reed*, 489 U.S. 255, 262 (1989) ("[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show" one of these exceptions).

Davis does not argue or establish that the fundamental miscarriage of justice exception applies. Davis appears to argue in his reply that he meets the cause and prejudice exception under *Martinez v. Ryan*, 566 U.S. 1 (2012). In recognizing a narrow exception to the rule that ineffective assistance of postconviction counsel does not constitute cause to overcome a procedural default, *Martinez* held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing *a substantial claim of ineffective assistance at trial* if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Id.* at 17 (emphasis added).

Thus, *Martinez* applies only to defaulted claims of ineffective assistance of trial counsel; it does not apply to defaulted claims of trial court error. *See Arthur v. Thomas*, 739 F.3d 611, 630 (11th Cir. 2014) ("[T]he *Martinez* rule explicitly relates to excusing a procedural default of ineffective-trial-counsel claims[.]"); *Gore v. Crews*, 720 F.3d 811, 815-16 (11th Cir. 2013) ("*Martinez* . . . clearly does not apply in the circumstances of this case because Gore's claim . . . is not a claim that trial counsel was ineffective. . . . By its own emphatic terms, the Supreme Court's decision in *Martinez* is limited to claims of ineffective assistance of trial counsel that are otherwise procedurally barred."). Accordingly, *Martinez* is not available to Davis to overcome the procedural default of Ground One. Davis does not establish another basis to apply the cause and prejudice exception. Since Davis has not overcome the procedural default, Ground One is barred from federal habeas review.

## B. Ground Two

Davis contends that trial counsel was ineffective for failing to move to suppress evidence obtained after "Detective Todd Koenig illegally searched the contents of [his] cellular telephone without his permission or a search warrant." (Doc. 1, p. 7.) Davis argues that counsel's failure "allowed highly prejudicial evidence" of his text message to Davasha Watts "to be presented against [Davis] that resulted in his conviction." (*Id.*, p. 8.)

14

As addressed, Detective Koenig testified that he asked for Davis's consent to look through his phone "to try to make contact with" Watts and that Davis gave him permission. (Doc. 7-2, Ex. 3, p. 432.) While looking through Davis's phone, Detective Koenig found a text message from Davis to Watts sent at 3:10 a.m. on December 7, 2012, several hours after the offenses. (Doc. 7-2, Ex. 3, p. 435.) The text message read, "I was with you until about 11:00." (*Id.*) The State did not introduce the text message during its case-in-chief. Instead, after Davis testified at trial that he was not with Edner Dely and was not around Earon Hicks on the night of the offenses, the State asked him about Davasha Watts on cross-examination. (*Id.*, pp. 344-45, 351-53.) On cross-examination, Davis testified that he was with Watts and denied asking her for an alibi through a statement such as "if anybody asks you, I was with you all night." (*Id.*, pp. 352-53.) The State then presented the text message when it called Detective Koenig during its rebuttal case to impeach Davis's testimony. (*Id.*, p. 435.) The State also called Watts in its rebuttal case. She testified that she was not with Davis at the time of the offenses. (*Id.* pp. 439-43.)

The state postconviction court denied Davis's claim that trial counsel was ineffective in not moving to suppress the text message. The court found that "it is clear from the record that law enforcement had probable cause to detain and arrest Defendant. The victim, who knew Defendant very well, was able to identify him and provide his name and description to police." (Doc. 7-3, Ex. 21, p. 3.) The court also noted that Davis "admits in his sworn

motions that he allowed Detective Koenig to retrieve Ms. Watts' number from his cell phone. In looking for the number, police found a text message to Ms. Watts asking her to provide Defendant with an alibi for the night of the burglary and shooting." (*Id.*) Therefore, the court found, "there would have been no grounds for counsel to file a motion to suppress evidence developed as a result of this arrest. . . . Counsel cannot be ineffective for failing to file motions that lack merit and would not succeed." (*Id.*, pp. 3-4.)

Davis has not shown entitlement to relief. Even assuming that Davis has shown the state court unreasonably applied *Strickland* by finding that counsel did not perform deficiently, Davis has not established resulting prejudice. The Fourth Amendment protects individuals against unreasonable searches and seizures. U.S. Const. amend IV. "A search of property, without warrant or probable cause, is proper under the Fourth Amendment when preceded by valid consent." *Ziegler v. Martin Cnty. School Dist.*, 831 F.3d 1309, 1321 (11th Cir. 2016) (quoting *United States v. Harris*, 526 F.3d 1334, 1339 (11th Cir. 2008)).  But an officer "violates the Fourth Amendment if he goes beyond the scope of consent." *Fuqua v. Turner*, 996 F.3d 1140, 1151 (11th Cir. 2021) (citing *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)). "The standard for measuring the scope of consent is an objective one—the question is 'what would the typical reasonable person have understood by the exchange between the officer and the suspect?' " *Fuqua*, 996 F.3d at 1151 (quoting *Jimeno*,

500 U.S. at 251). "The scope of a search is generally defined by its expressed object." *Fuqua*,

996 F.3d at 1151 (quoting *Jimeno*, 500 U.S. at 251).

The state court recognized that Davis's sworn postconviction motion indicated that

he gave Detective Koenig permission "to retrieve Ms. Watts's number from his cell phone."

(Doc. 7-3, Ex. 21, p. 3.) Further, as Detective Koenig testified, Davis indicated that "the

information to get in touch with" Watts was on his phone, and Detective Koenig asked for

permission to look through the phone "to try to make contact with" Watts in order to verify

Davis's alibi:

> Q.    And did you ask [Davis] specifically about his whereabouts in the hour
> before and after this offense occurred?
>
> A.    I did.
>
> Q.    And what was his response to you as to where he was and who he was
> with at that time?
>
> A.    He stated he was at Davasha Watts' house.
>
> . . .
>
> Q.    Did you confront Mr. Davis about his allegation of being with Ms.
> Watts that night?
>
> A.    I did.

Q.    And did you ask him if there would be a way that you would be able to confirm this alibi?

A.    Yes, sir.

Q.    And what was his response?

A.    He stated the information to get in touch with Davasha was on his phone.

Q.    Okay. Did he have a cell phone on his person?

A.    He had when I first made contact with him, but a detective, as we patted him down, took the phone.

Q.    Okay. So a phone was removed off of his person?

A.    Yes, sir.

Q.    And was that phone impounded for evidentiary purposes?

A.    Yes, sir.

Q.    Prior to it being impounded - - well, scratch that.

Did you ask Mr. Davis for consent to look through his phone in order to find any information relating to what he had told you about Davasha Watts?

A.      Yes, to try to make contact with her.

Q.      Did he grant you permission to go through his phone?

A.      Yes, sir.

Q.      And did you go through his phone?

A.      Yes, sir.

(Doc. 7-2, Ex. 3, pp. 430-32.) On cross-examination, Detective Koenig testified:

Q.      Okay. Did you tell [Davis] you were going to start looking through his text messages?

A.      No, sir.

Q.      Did you have permission to look through the text messages?

A.      I assumed I had permission to look through the phone at that time.

Q.      But that's not what he told you, did he? He said you can get the contact information for Davasha, right?

A.      That was the first button I pushed on to try to get to her information.

19

(*Id.*, pp. 436-37.)

Thus, the "expressed object" of the cell phone search, as a "typical reasonable person" would have understood it, was to obtain Watts's contact information. *See Fuqua*, 996 F.3d at 1151. While Detective Koenig's testimony indicates that in attempting to retrieve Watts's contact information, he saw the text message, his examination of the text message's content appears to have exceeded the scope of the permission granted by Davis and might have resulted in a Fourth Amendment violation at least under the consent doctrine. *See Fuqua*, 996 F.3d at 1151. Of course, had trial counsel moved to suppress, the record as to the precise scope of consent and whether Detective Koenig's selection of Watts's text message as a reasonable action consistent with Davis's consent would likely have been better developed for this Court to assess.

In addition to consent, the state court's order also indicates that Detective Koenig properly recovered the text message during a search incident to a lawful arrest. *See, e.g.*, *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (explaining that "[a]mong the exceptions [to the general rule that warrantless searches are unreasonable under the Fourth Amendment] is a search incident to a lawful arrest. The exception derives from the interests in officer safety and evidence preservation that are typically implicated in arrest situations.") (citations omitted). But at the time of Davis's January 2014 trial, the Florida Supreme

Court had decided *Smallwood v. State*, 113 So.3d 724 (Fla. 2013). There, the Florida

Supreme Court answered the following certified question in the negative: "Does the

holding in *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 39 L.Ed.2d 427 (1973),

allow a police officer to search through photographs contained within a cell phone which

on an arrestee's person at the time of a valid arrest, notwithstanding that there is no

reasonable belief that the cell phone contains evidence of any crime?" *Smallwood*, 113

So.3d at 726.[6]

In *Smallwood*, police conducted a warrantless search of Smallwood's cell phone

following his arrest. *Id.* at 727. Police found five incriminating photographs, which the

State introduced at trial. *Id.* at 727-28. The Florida Supreme Court determined that,

"while the search-incident-to-arrest warrant exception is still clearly valid, once an arrestee

is physically separated from an item or thing, and thereby separated from any possible

weapon or destructible evidence, the dual rationales for this search exception no longer

apply." *Smallwood*, 113 So.3d at 735. Thus, "while law enforcement officers properly

separated and assumed possession of a cell phone from Smallwood's person during the

search incident to arrest, a warrant was required before the information, data, and content

of the cell phone could be accessed and searched by law enforcement" consistent with the

---

[6] *Robinson* addressed the search incident to arrest exception, holding that "in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." 414 U.S. at 235.

Fourth Amendment *Id.* at 740. Under *Smallwood*, a motion to exclude the text message from Davis to Watts would have had a strong likelihood of success based on the similar facts involving a warrantless search of a cell phone's contents when there was no indication that evidence of a crime was on the phone. Of course, in June 2014, after Davis's trial, the Supreme Court of the United States issued *Riley v. California*, 573 U.S. 373 (2014), which held that officers generally must secure a warrant before conducting a search of information on a cell phone.

Although trial counsel performed deficiently in not seeking to exclude the text message and the state court's application of *Strickland*'s deficient performance prong was thus unreasonable, Davis cannot obtain federal habeas relief on this claim of ineffective assistance because he cannot establish prejudice as a result of counsel's performance. *See Zakrzewski v. McDonough*, 455 F.3d 1254, 1260 (11th Cir. 2006) (explaining that to prevail on a claim of ineffective assistance of trial counsel for failing to file a motion to suppress, a petitioner must prove both deficient performance and a reasonable probability of a different verdict if not for the excludable evidence).

Because the state court did not reach the *Strickland* prejudice prong in deciding Davis's ineffective assistance claim, this Court assesses prejudice de novo.[7] *See Rompilla v.*

---

[7] In his reply, Davis claims that the Court should find prejudice under *United States v. Cronic*, 466 U.S. 648 (1984), which identifies three exceptional circumstances where prejudice from counsel's deficient performance may be presumed. "Prejudice may be presumed under *Cronic* where, and only where, (1) there

*Beard*, 545 U.S. 374, 390 (2005) (finding that when deficient performance is established, "there is a further question about prejudice . . . Because the state courts found the representation adequate, they never reached the issue of prejudice . . . and so we examine this element of the *Strickland* claim *de novo*"); *Whatley v. Warden, Ga. Diagnostic and Classification Center*, 927 F.3d 1150, 1181 (11th Cir. 2019) ("If the district court decides the state court's decision was based on an unreasonable application of Supreme Court precedent . . . only then can it review the claim *de novo*"); *DeBruce v. Comm'r, Ala. Dep't of Corr.*, 758 F.3d 1263, 1266 (11th Cir. 2014) ("If we determine that the state court's adjudication of DeBruce's *Strickland* claims was unreasonable under § 2254(d), we must then undertake a *de novo* review of the record.").

Even under de novo review, Davis fails to show a reasonable probability of a different outcome at trial had counsel successfully moved to exclude the text message. As addressed, Hicks testified that he knew Davis, and that Davis was the person who came into the home with the gun and shot him. The jury heard that Hicks initially told Detective

---

is a *complete* denial of counsel at a critical stage of the trial, (2) counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing, or (3) under the circumstances the likelihood that counsel could have performed as an effective adversary was so remote as to have made the trial inherently unfair." *Castillo v. Fla. Sec'y of DOC*, 722 F.3d 1281, 1286-87 (11th Cir. 2013) (internal quotation marks omitted) (emphasis in original). But *Cronic*'s presumption of prejudice "applies to only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all." *Stano v. Dugger*, 921 F.2d 1125, 1153 (11th Cir. 1991) (en banc). Davis has not established that any of these three exceptional circumstances were present in his case.

Koenig that both perpetrators were armed and that he told Deputy Aaron Ziegler, who responded to his 911 call, that he was shot by someone named Sinclair and someone named Edner. (Doc. 7-2, Ex. 3, pp. 273, 311.) Hicks also selected Dely in a photopack as the person who shot at him, but at one point asked for charges against Dely to be dropped. (*Id.*, pp. 236-39.) Despite these earlier statements, Hicks testified at trial that he identified Dely in the photopack because he believed Dely was equally as responsible for the shooting as Davis and he wanted Dely to receive the same punishment as Davis. (*Id.*, pp. 256-57.) Hicks testified that he asked for the charges to be dropped because Dely's family offered him money, which he needed for bills including his medical bills related to this shooting. (*Id.*, pp. 241-43.) Hicks testified that he did not receive any money and that he then cooperated with the prosecution of Dely. (*Id.*, p. 243.) Hicks unequivocally and repeatedly testified that only Davis shot him, and identified Davis in court:

> Q.     And what, if anything happened at the moment you landed on the tile floor of the kitchen [after slipping and falling while trying to flee]?

> A.     That's when he came out and he just started firing off shots.

> Q.     You talking about Sinclair Davis?

> A.     Yes.

Q.    Mr. Hicks, do you see the person who shot those rounds into you here in the courtroom today?

A.    Yes, sir.

Q.    Would you please point to that person and identify an article of clothing they're wearing. What are they wearing?

A.    Black suit, gray vest.

Q.    Is it the gentleman without a tie on?

A.    Yes.

[PROSECUTOR]: Your Honor, may the record reflect the witness identified the defendant?

THE COURT:    The record may so reflect.

. . .

Q.    Were you able to see who the person was that shot these rounds in your direction?

A.    Yes.

Q.    And was that Sinclair Davis?

A.     Yes, sir.

Q.     While this was occurring, where was Edner Dely, if you know?

A.     He was still on the outside, but he had stepped in I guess to see what was happening.

Q.     Okay. At some point he entered your home as well?

A.     Yes, sir.

Q.     Is the only person that shot you Mr. Davis?

A.     Yes, sir.

. . .

Q.     All right. And is it your testimony today that there were no shots fired from Mr. Dely towards you?

A.     Yes.

Q.     That's your testimony today?

A.     Yes.

. . .

26

Q.   Mr. Hicks, so we're clear, was the only person that shot you that night Sinclair Davis?

A.   Yes, sir.

(*Id.*, pp. 221-23, 235, 241.)

In addition, Davasha Watts testified that Davis was not with her at the time of the offenses, as Davis asserted on the stand. Thus, the text message from Davis to Watts, even if it could have been suppressed, did not constitute the only evidence impeaching his alibi theory. Considering the evidence contradicting Davis's alibi—including critical eyewitness testimony from the victim, who knew Davis and identified Davis as having entered the home and shot him and Watts denying that Davis was with him—Davis fails to show a reasonable probability of a different outcome at trial if the jury had not learned of the text message. Accordingly, because Davis fails to show prejudice under *Strickland*, he fails to establish entitlement to relief on his claim of ineffective assistance of trial counsel for not filing a motion to suppress. Davis is not entitled to federal habeas relief on Ground Two.

## C. Grounds Three and Four

In Ground Three, Davis argues that trial counsel was ineffective for not deposing "material witnesses" prior to trial. (Doc. 1, p. 9.) In Ground Four, Davis contends that trial

counsel was ineffective for failing to object to improper prosecutorial comments.[8] When Davis raised these ineffective assistance of trial counsel claims in his first postconviction motion, the state postconviction court struck them as facially insufficient and gave Davis leave to amend. (Doc. 7-3, Ex. 18, pp. 2-4.) The court found that both claims failed to allege prejudice resulting from counsel's alleged deficient performance and also found that Davis's claim of ineffective assistance with respect to material witnesses lacked required factual allegations about the witnesses. (*Id.*)

Accordingly, the court gave Davis 60 days to cure the identified pleading deficiencies. (*Id.*, pp. 3-4.) *See Spera v. State*, 971 So.2d 754, 761-62 (Fla. 2007) (holding that when a defendant's initial Rule 3.850 motion is "deemed facially insufficient to support relief [because the claims] fail to contain required allegations" the trial court "abuses its discretion when it fails to allow the defendant at least one opportunity to amend the motion."). The state court warned Davis that the failure to timely amend his claims would result in their denial with prejudice. (*Id.*)

Davis's amended motion also lacked the required information identified by the state court. (Doc. 7-3, Ex. 19.) Therefore, the state court denied Davis's claims under *Spera*,

---

[8] In his reply, Davis mentions ineffective assistance of appellate counsel with respect to Grounds Three and Four. (Doc. 10, pp. 11, 13.) This appears to be a typographical error, as the claims concerned trial counsel's performance, and Davis raises no independent claims of ineffective assistance of appellate counsel in his § 2254 petition. Further, a petitioner may not bring a new claim in his reply. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("[A]rguments raised for the first time in a reply brief are not properly before a reviewing court.") (citations omitted).

971 So.2d 754 (Fla. 2007), for failure to timely amend them under its earlier order. (Doc. 7-3, Ex. 21, pp. 5-6.) The denial for failure to amend the claims to include necessary allegations, including failure to allege *Strickland* prejudice, was an adjudication of the claims on the merits. *See Borden v. Allen*, 646 F.3d 785, 808-16 (11th Cir. 2011) (examining a state postconviction court's rejection of a claim for failure to plead the claim with sufficient specificity and stating that the state court's "consideration of the sufficiency of the pleadings concerning a federal constitutional claim [in a postconviction motion] necessarily entails a determination on the merits of the underlying claim"); *Gaedtke v. Sec'y, Dep't of Corr.*, 369 F. App'x 12, 13-14, 16 n.2 (11th Cir. 2010) (stating that a state court's denial of an ineffective assistance claim as facially insufficient when the petitioner did not allege he was prejudiced and therefore "failed the prejudice prong of *Strickland*" was a denial on the merits entitled to deference under § 2254(d)(1)).

Davis does not show that the state court's denial of his claims involved an unreasonable application of *Strickland*. A petitioner carries the burden of establishing a reasonable probability that the outcome of the proceeding would have been different due to counsel's alleged deficient performance before he can obtain relief under *Strickland*. *See, e.g.*, *Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001) ("A petitioner has the burden of establishing his right to federal habeas relief and of proving all facts necessary to show a constitutional violation."). Davis did not allege *Strickland* prejudice when he presented his

claims to the state postconviction court, even after the court gave him an opportunity to amend his claims by including such allegations. Because Davis's failure to plead any facts sufficient to support a finding of prejudice in his amended postconviction motion results in a failure to establish prejudice as he must to obtain relief, he does not show that the state court's denial of his claims involved an unreasonable application of *Strickland*. As a result, Davis is not entitled to federal habeas relief on Ground Three or Ground Four.

## V. <u>CERTIFICATE OF APPEALABILITY</u>

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Instead, a district court or court of appeals must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a COA, Davis must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Davis has not made the requisite showing. Finally, because Davis is not entitled to a COA, he is not entitled to appeal in forma pauperis.

It is therefore **ORDERED** that Davis's Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Davis and in Respondent's favor and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on January 7, 2022.

Kathryn Kimball Mizelle
United States District Judge